UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| LAURIE KADOCH, : | |
| : | |
| Appellant, : | |
| : | |
| v. : | Case No. 1:15-cv-00093-jgm |
| : | |
| DAVID KADOCH, : | |
| : | |
| Appellee. : | |
| _____ : | |

OPINION AND ORDER
(Doc. 1)

I.  Introduction

Appellant Laurie Kadoch (Kadoch) appeals the Bankruptcy Court's April 3, 2015 final order overruling creditors' objections to David Kadoch's (Debtor) homestead exemption. For the following reasons, the Bankruptcy Court's decision is affirmed.

II. Background[1]

Appellant Laurie Kadoch is the former spouse of Appellee David Kadoch who filed for bankruptcy under Chapter 13 of the Bankruptcy Code in October 2014. In January 2015, Debtor's notice of voluntary conversion to Chapter 7 was granted. (Docs. 2-30; 2-31.) After a January 23, 2015 hearing, the Bankruptcy Court issued an oral ruling sustaining the creditors' objections to Debtor's invocation of the homestead exemption. On January 28, however, the Court sua sponte vacated its oral ruling (Doc. 2-37), "based upon its discovery of case law that raised issues which might have influenced the Court's decision in the Case, had they been squarely addressed by the parties." (Doc. 2-48 at 2.) The Court requested additional briefing (Doc. 2-37), held a continued

---

[1] The facts are gleaned primarily from the Bankruptcy Court's Memorandum of Decision (Doc. 2-48). The entire Record is available at Docket Entry 2. Unless otherwise noted, the relevant facts were stipulated by the parties or found without challenge by the bankruptcy court.

hearing in March, at which it issued an oral ruling overruling the objections and ruling Debtor's homestead exemption was effective, and issued an April 3, 2015 Memorandum of Decision memorializing the bench ruling (Doc. 2-48). The Bankruptcy Court denied Kadoch's timely filed motion to reconsider (Doc. 2-52). (Doc. 2-57.) This appeal followed.

The parties do not dispute the facts. In 2002, Kadoch and Debtor--spouses at the time--purchased a property, 2024 Main Street in Queechee, Vermont, in need of significant renovations. In 2004-2005, the couple borrowed a total of $200,000 from the Clenotts (the "Clenott debt"), Kadoch's parents, to renovate 2024 Main Street while they continued to reside at their property in Saltbox Village. In late 2005 or early 2006, Debtor began residing at 2024 Main Street and filed the state tax declaration that the property was his homestead in 2006.

After a lengthy marriage, Kadoch and Debtor separated. In June 2010, the state family court entered a final divorce decree based upon a stipulation between Kadoch and Debtor directing Debtor to sell 2024 Main Street and both parties to each pay half the Clenott debt. (Doc. 2-9 at 9-11.) In October 2010, with Debtor's consent, a state court granted judgment against the Debtor in the amount of $208,090.83 in favor of Ms. Clenott (the "Clenott Judgment"). In July 2014, the state family court entered an order finding Debtor in contempt of the divorce decree based on, inter alia, his failure to sell 2024 Main Street and appointing a receiver to sell the property. (Doc. 2-9 at 12-16.)

As noted, Debtor filed for bankruptcy on October 10, 2014, and, as of that date, had not sold 2024 Main Street, in which he claimed a homestead exemption, or paid the Clenott Judgment. He asserts he paid $102,000 toward the Clenott debt in 2011. (Doc. 8 at 8; Doc. 2-19 at 108.) In October 2014, 2024 Main Street was subject to a first mortgage in the amount of approximately $311,000. The outstanding balance of the Clenott debt, as of filing of the proof of claim, was

$164,088.35. The range of value attributed to 2024 Main Street by the parties is $400,000 to $528,500. (Doc. 2-48 at 12-13 & n.12.)

III.    Discussion

On appeal, Kadoch argues the Bankruptcy Court erred: (1) because the Rooker-Feldman doctrine bars Debtor from filing bankruptcy to relitigate the divorce decree; (2) by allowing Debtor to claim a homestead exemption in proceeds the divorce decree earmarked for payment of marital debt; (3) by selectively enforcing the divorce decree to create equity for the homestead exemption; (4) by assuming the Clenott judgment lien is avoidable; (5) in construing Vermont homestead statutes; and, (6) in denying Kadoch's motion to reconsider on the grounds the § 523(a)(15) discharge issue was raised for the first time in that motion. (Doc. 7.) Debtor filed his brief opposing Kadoch's arguments on September 23, 2015. (Doc. 8.) Kadoch filed her reply brief on October 15, 2015. (Doc. 10.)

A bankruptcy court's "[f]indings of fact are reviewed for clear error, and conclusions of law are reviewed de novo." Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 91 (2d Cir. 2010).

The Rooker-Feldman doctrine prohibits district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic. Indus. Corp., 544 U.S. 280, 284 (2005). Based on the Supreme Court's Exxon Mobil holding, the Second Circuit Court of Appeals has articulated four requirements that must be met for the doctrine to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries caused by [a] state court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"–i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

Here, Debtor is the federal-court plaintiff in his bankruptcy action. Kadoch asserts Debtor lost in state family court because he "lost the title to" and was ordered to sell his 50% interest in the 2024 Main Street property. (Doc. 7 at 42.) Because the same is true for Kadoch--both parties received a 50% interest in the property and were ordered to sell that interest to pay marital debt--Debtor did not lose in state court. Further, the state court did not consider the issue of a homestead exemption--the issue primarily before the federal court--in determining the property settlement between Kadoch and Debtor because "the homestead exemption does not apply in the context of a divorce." Pearson v. Pearson, 726 A.2d 71, 76 (Vt. 1999). This case is distinguishable from In re Brooks, No. 14-10096, 2014 WL 2158994 (Bankr. D. Vt. May 22, 2014), because the property at issue in that case had been awarded solely to the former spouse, and, therefore, the debtor's bankruptcy estate had no interest in the property. Accordingly, Kadoch's first argument is rejected.

Kadoch argues the bankruptcy court erred by allowing Debtor to claim a homestead exemption in proceeds the divorce decree earmarked for payment of marital debt. She posits the bankruptcy estate acquired only the right to 50% of any equity proceeds from the sale of 2024 Main Street that remained after the payment of the joint marital debt ordered to be paid under the divorce decree. (Doc. 7 at 45-47.) Debtor claims a state law homestead exemption of $125,000 in the proceeds of the sale of 2024 Main Street. See Vt. Stat. Ann. tit. 27, § 101; Vt. Stat. Ann. tit. 12, § 3023. Kadoch asserts the bankruptcy court overlooked the encumbrance created under section 754 of title 15 of the Vermont Statutes upon the recording of the divorce decree and contempt order. She argues, without support, that the recorded divorce decree defines Debtor's rights in bankruptcy.

4

The bankruptcy court addressed Kadoch's section 754 encumbrance argument noting section 754 creates an encumbrance only "in accordance with the terms of the judgment." (Doc. 2-48 at 7.) The court found the divorce decree directed the joint debts be paid from proceeds of the sale of the property, but did not reference security for the obligation, and held the divorce decree did not create a lien in favor of Ms. Clenott. That the contempt order entered in state court required the receiver, after sale of 2024 Main Street, to "equally disburse the net proceeds" between Kadoch and Debtor rather than to pay the joint creditors further undermines the argument the divorce decree created a lien. As the divorce decree did not create security for the obligation to pay the Clenott debt, this Court cannot disagree with the bankruptcy court's holding.

Kadoch points to 11 U.S.C. § 523(a)(15) as a "self-executing" bar to the dischargeability of Debtor's "obligations to Laurie Kadoch under the property settlement." (Doc. 7 at 44-45.) Section 523(a)(15) prevents discharge of a debt to a spouse incurred in connection with a divorce decree. Because Kadoch first raised this issue in her motion for reconsideration, it was not addressed in the bankruptcy court's April memorandum of decision. In denying reconsideration, the bankruptcy court stated, were it to entertain the argument, it would find it unavailing because [d]ischargeability and enforcement of debts are distinct questions." (Doc. 2-57 at 2.) This Court rejects this argument because the divorce decree did not create a debt owed by Debtor to Kadoch. Instead, both parties were required to sell their interests in jointly owned properties to pay joint marital debt.

Kadoch next argues the bankruptcy court erred by selectively enforcing the divorce decree to create equity for the homestead exemption. (Doc. 7 at 52-54; Doc. 10 at 18-23.) Under Vermont law, the homestead exemption amount is part of the homeowner's equity and not part of the value subject to the mortgage. <u>Mercier v. Partlow</u>, 546 A.2d 787, 789 (Vt. 1988). She asserts the bankruptcy court's order "enforces" the sale provision of the divorce decree while "declining to

5

enforce the non-dischargeable Property Settlement" compelling the payment of joint marital debt. Id. at 54. This "selective enforcement" creates equity by deducting half the outstanding mortgage amount from half the estimated property value leaving Debtor an equity amount. Kadoch argues first that the entire mortgage amount attaches to Debtor's half of the property value leaving him no equity for the homestead exemption, and second that the entire divorce decree must be enforced leaving Debtor only half the proceeds remaining after the property is sold and the mortgage and joint marital debt paid as equity for the exemption. She notes if the divorce decree is not enforceable in bankruptcy, there is no requirement the property be sold and Debtor would have no equity in the property to support his exemption. Id.

In determining Debtor's potential equity for purposes of the homestead exemption, the bankruptcy court applied the holding of Obuchowski v. Kleinfeldt (In re Kleinfeldt), No. 06-10415, 2007 WL 2138748 (Bankr. D. Vt. July 23, 2007).[2] The Kleinfeldt Court held "if [a] [p]roperty is to be sold, and the homestead exemption is to be computed in the context of allocation of the sale proceed[s], the legal fiction of the joint and several liability of each co-tenant [for the mortgage] is dissolved and the Court must compute the allocation of net proceeds from a single pot." 2007 WL 2138748, at *4 (citing In re Norton, 327 B.R. 193, 198 (Bankr. D. Vt. 2005)). That is what the court did here (Doc. 2-48 at 13), in reliance on the Debtor and trustee's indication--and Kadoch and Ms. Clenott's acquiescence--that 2024 Main Street would be sold. Because the bankruptcy court's assumption the property would be sold was not based on an "enforcement" of the divorce decree, Kadoch's argument regarding "selective enforcement" of that decree is unavailing.

---

[2] The Court notes because Debtor owns only half 2024 Main Street, he may be entitled to only half the Vermont homestead exemption amount. See In re Norton, 327 B.R. at 196; D'Avignon v. Palmisano, 34 B.R. 796, 800 (D. Vt. 1982). This is a determination to be made by the Bankruptcy Court in the first instance. See Doc. 2-48 at 17 n.17.

Kadoch next argues the bankruptcy court erred by assuming the Clenott judgment lien is avoidable. She asserts that upon entry of the divorce decree, the "non-equity balance of Debtor's 50% interest in 2024 Main [Street] vested in Laurie Kadoch," to be sold with her interest to fund the property settlement and pay joint marital debt, so it never became an asset of the bankruptcy estate, and is therefore not subject to discharge. (Doc. 7 at 54-55 (citing cases).) See also Doc. 10 at 10-18. This argument is the corollary to her earlier argument that the bankruptcy estate acquired only the right to 50% of any equity proceeds from the sale of 2024 Main Street that remained after the payment of the joint marital debt ordered to be paid under the divorce decree. See supra. For essentially the same reasons already discussed, and because Kadoch has not demonstrated the recorded divorce decree defines Debtor's rights in bankruptcy, the Court rejects Kadoch's argument.

Kadoch next argues the bankruptcy court erred in construing the Vermont homestead statutes. (Doc. 7 at 56-63; Doc. 10 at 24-29.) Specifically, she asserts section 107 must be construed in pari materia with sections 101 and 109 "so that a uniform definition of homestead and occupancy would apply to all three homestead statutes." Doc. 7 at 56; Vt. Stat. Ann. tit. 27, §§ 101, 107, 109. Section 101 provides for the exemption of up to $125,000 of value of a person's homestead from attachment and execution; Section 107 provides an owner acquires a homestead subject to pre-existing debt; and Section 109 provides a new homestead is not subject to debts to which the prior homestead would not have been liable if the new homestead was acquired with consideration derived from sale of the prior homestead. Kadoch argues the bankruptcy court erred in holding the Debtor did not acquire 2024 Main Street subject to the Clenott debt; put another way, that Debtor's homestead interest in 2024 Main Street is exempt from attachment and execution to satisfy the Clenott debt.

7

Kadoch argues the bankruptcy court's holding attributed two simultaneous homesteads to Debtor, in violation of Vermont law. As explained in the denial of the motion to reconsider:

> The Decision does not permit the Debtor to have two homesteads at one time. That result would be contrary to Vermont law. See Brattleboro S&L Ass'n v. Hardie, 2014 VT 26, ¶ 12 (Vt. 2014) ("No person may have more than one homestead at a time[]"). The Decision makes a finding that the Debtor's homestead was the Salt Box Road property through July 2005, well after the Debtor purchased the Main Street, Queechee property, and it remained his homestead until he began residing at the Main Street, Queechee property. As the Court's analysis indicates, under § 107, the question of whether a creditor may enforce a debt against a particular parcel of property depends on whether (1) as of the date of attempted enforcement, a debtor holds the property as his or her homestead, and (2) whether the debtor incurred the debt to that creditor before or after acquiring that property. The Decision does not hold that the Property became a homestead on the date of acquisition under § 107.

(Doc. 2-57 at 4.) See also Doc. 2-48 at 13-17.

Section 107, in its entirety, reads: "Such homestead shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead except as otherwise provided in this chapter. For that purpose, such time shall be the date of the filing of the deed of such homestead in the proper office for the record of deeds." Vt. Stat. Ann. tit 27, § 107.

Kadoch presses the Court to interpret the "'not entirely clear'" section 107 in accordance with her reading such that Debtor acquired 2024 Main Street subject to the Clenott debt and is therefore not entitled to the protection of the homestead exemption. (Doc. 7 at 58 (quoting Doc. 2-48 at 15).) The alternative interpretation advocated by Debtor, and determined to be correct by the bankruptcy court, is that as soon as a deed to property is recorded, regardless of whether the property is at that time used or kept as a homestead, the bar of section 107 is effective to shield the property from causes of action arising after that time, so long as the property is being used as a homestead at the time of the action. (Doc. 2-48 at 14-15.)

The second sentence of section 107 defines the "time of acquiring the homestead" for purposes of "attachment and levy of execution" on the homestead as "the date of the filing of the

deed." This language compels the Court to agree with the bankruptcy court's interpretation. The statute does not define the time of acquiring the homestead as the date the property began to be used as a homestead. The Vermont Supreme Court interpreted a prior version of section 107, coming to the same conclusion. The Court determined the statute:

> clearly exempts the homestead from attachment on all debts except such as have an existence at the time the deed thereof is left for record. The word "homestead" is evidently used in the statute with reference to the condition of the premises in that respect, at the time the attempt is made to attach or levy upon it, and not to its condition at the time the deed is left for record.

W. River Bank v. Gale, 42 Vt. 27, 31 (Vt. 1869). The facts of the West River Bank v. Gale case are: Gale purchased a property in 1855, recorded the deed in 1857, signed a note as surety to West River Bank in 1859, and moved with his family into the property, making it his home, and continued to reside there through the Bank's commencement of suit in 1861 and obtainment of a judgment. Id. at 30. The Bank argued--as does Kadoch here--the property was not exempt from attachment because the debt existed at the time Gale first began to occupy it as a homestead. Id. at 30-31. To determine whether the property was subject to the attachment while occupied as a homestead, the court interpreted the statute, and noted "if the legislature had intended to leave the homestead subject to attachment on all debts existing at the time it was first occupied as such, language would have been used indicating such an intent." Id. at 32. The Court held Gale's homestead in the property was not subject to attachment by the Bank. Id.

More recently, the Vermont Supreme Court noted section 107 has not been amended since 1849, except as part of the 1947 comprehensive revision where it was separated from section 101 and separately titled "Liability for debts." Weale v. Lund, 904 A.2d 1191, 1194 (Vt. 2006). The Weale Court acknowledged the "legislative acquiescence" to its longstanding interpretation of section 107. Id. at 1195.

9

Debtor and Kadoch purchased and recorded the deed to 2024 Main Street in 2002, incurred the Clenott debt in 2004-2005, Debtor began residing there as his homestead in late 2005 or early 2006, and Ms. Clenott obtained a judgment against Debtor in 2010. Just as in West River Bank, Debtor purchased the property and recorded the deed before the Clenott debt was contracted, and occupied it as a homestead after the debt was contracted but before the property was attached by Ms. Clenott. Here, where the facts are indistinguishable from those the Vermont Supreme Court analyzed in West River Bank, applying essentially the same law, the Court cannot find fault with the bankruptcy court's holding.

Lastly, Kadoch argues the bankruptcy court erred in denying Kadoch's motion to reconsider on the grounds the § 523(a)(15) discharge issue was raised for the first time in that motion. (Doc. 7 at 63-64.) She asserts the issue was not raised by Debtor and that the bankruptcy court raised the issue in the April memorandum of decision. Her motion to reconsider was filed "to address the new discharge issue the Bankruptcy Court had raised for the first time." Id. at 64. Even were the Court to find the bankruptcy court erred in refusing to grant reconsideration on the basis of the § 523(a)(15) issue, as noted above, this Court has rejected Kadoch's § 523(a)(15) argument on the merits because the divorce decree did not create a debt owed by Debtor to Kadoch. Accordingly, the Court will not disturb the bankruptcy court's ruling on this basis.

IV.     Conclusion

Based on the foregoing, the Order of the Bankruptcy Court is AFFIRMED. This Court, as well, is cognizant of the equitable considerations underlying this case, see Doc. 2-57 at 4; the Supreme Court, however, has recently cautioned a court may not contravene specific statutory provisions of the Bankruptcy Code based on a finding of fraud, misrepresentation, or bad faith.

See Law v. Siegel, 134 S. Ct. 1188, 1194 (2014). In other words, there is no general equitable power in bankruptcy courts to deny exemptions based on a debtor's bad faith conduct. Id. at 1196.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 15th day of December, 2015.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge